**IN THE UNITED STATES BANKRUPTCIES COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| **THE TOWN OF MOFFETT,** ) | |
| Debtor ) | Case No.: 09-81814 |
| ) | Chapter : 9 |

## DEBTOR'S DISCLOSURE STATEMENT

### I. Introduction

The Town of Moffett (the "Debtor") is providing this Disclosure Statement to all of the Debtor's known Impaired Creditors in connection with Debtor's Plan of Debt Adjustment (the "Plan"), a copy of which accompanies the Disclosure Statement. The Plan has been developed based upon thorough review and analysis of the Debtor's financial condition, business plan, and rehabilitation alternatives.

The Debtor has concluded that the Plan provides fair and equitable treatment of all creditors, the greatest feasible recovery to creditors and that confirmation of the Plan is in the best interests of creditors. The Debtor requests that all creditors in Impaired Classes vote to accept the Plan after careful review.

### II. Purpose of Disclosure Statement and Procedure for Plan Confirmation

A.  Purpose and General Information

Pursuant to 11 U.S.C. § § 901 (a) and 1125 (the United States Bankruptcy Code), the Debtor submits this Disclosure Statement to provide creditors with adequate information to allow them to make an informed judgment about the acceptability of the Plan. Specifically, the purpose of this Disclosure Statement is to give creditors sufficient information, as far as it is reasonably practicable for the Debtor to provide, that would allow a hypothetical reasonable investor typical of the holders of claims in the classes impaired under the Plan to make an informed judgment about whether to accept or to reject the Plan. **A COPY OF THE PLAN ACCOMPANIES THIS DISCLOSURE STATEMENT. PLEASE REFER TO THE PLAN FOR THE TREATMENT OF CLAIMS.** The Provisions of the Plan are binding on all

Case 09-81814   Doc 101   Filed 09/01/11   Entered 09/01/11 21:19:05   Desc Main
Document     Page 1 of 12

creditors; therefore, please read the Plan carefully.

NO REPRESENTATIONS ABOUT THE DEBTOR, PARTICULARLY ABOUT THE DEBTOR'S PROJECTED FUTURE INCOME AND OPERATIONS OF THE VALUE OF IT'S PROPERTY, ARE AUTHORIZED BY THE DEBTOR OTHER THAN WHAT IS SET FORTH IN THIS DISCLOSURE STATEMENT OR IN ANY COURT APPROVED NEED ABRIDGED VERSION OF THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT (OR ANY COURT APPROVED ABRIDGED VERSION OF THIS DISCLOSURE STATEMENT) SHOULD NOT BE RELIED UPON BY ANY CREDITOR. ANY ADDITIONAL REPRESENTATION OR INDUCEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR WHO, IN TURN, SHALL DELIVER THE INFORMATION TO THE BANKRUPTCY COURT OR TAKE OTHER APPROPRIATE ACTION.

The information contained in this Disclosure Statement has not been subject to a certified audit. For the forgoing reason, as well as because of the impossibility of making assumptions, estimates and projections into the future with absolute accuracy, the Debtor is unable to warrant or represent that the information contained in this Disclosure Statement is complete and accurate, although reasonable and appropriate effort has been made to present complete and accurate information. The records kept for the Debtor rely for the accuracy on internal bookkeeping. However, every reasonable effort has been made to present accurate information. Counsel for the Debtor has not independently verified any of the information provided by the Debtor and does not make any representations or warranties with respect to the truth or accuracy of any of the information presented.

All parties entitled to vote on the Plan are urged to fully review the Plan and this Disclosure Statement, together with all exhibits attached thereto, prior to voting on the Plan and may desire to consult legal counsel prior to voting to ensure complete understanding of their treatment under the Plan. This Disclosure Statement is intended for the sole use of creditors is urged to consult its own tax advisor as to the consequences of the Plan to it under federal and applicable state, local and foreign tax laws. The Debtor makes no warranties or representations regarding the tax impact of the Plan on any creditor.

The Debtor believes the Plan is feasible, fair and equitable and the confirmation of the Plan is in the best interest of creditors.

B. <u>Manner of Voting</u>.

    1. **Classes entitled to Vote**: The Plan divides the claims of creditors into Five (5) classes. Only classes of creditors with claims impaired under a plan of reorganization (debt adjustment in this case) are entitled to vote on a plan. Generally, and subject to the specific provisions of the Bankruptcy Code, and I Impaired Class includes creditors whose claims or interests, under a Plan, will be modified in terms of principal, interest, length of time for payment or a combination of the above. Each holder of a Claim in a Class that is not Impaired under the Plan is conclusively presumed to have accepted the Plan and solicitation of acceptances from the holders of such Claims is not required and will not be undertaken.

The Class of Creditors not Impaired under the Plan is Class 2 (Comp. Laws of Oklahoma). The remaining classes are impaired under the plan.

    2. **Procedure for Voting:** All creditors entitled to vote may cast their vote by completing, dating and signing the ballot included with this Disclosure Statement and mailing it using the stamped, self-addressed envelope, to legal counsel for the Debtor:

> Chris W. Blankenship
> Blankenship Law Offices, P.C.
> PO Box 69
> Stigler, Oklahoma 74462

IN ORDER TO BE COUNTED, THE COMPLETED BALLOT MUST BE RECEIVED NO LATER THAN THE DEADLINE FOR SUBMITTING BALLOTS TO BE SET BY THE COURT. A BALLOT DOES NOT CONSTITUTE A VALID PROOF OF CLAIM IN THE DEBTOR'S CASE.

C. <u>Confirmation of the Plan:</u>

    1. <u>Solicitation of Acceptance of the Plan.</u> This Disclosure Statement is being filed with the Bankruptcy Court and submitted to creditors, including bondholders, in

Case 09-81814    Doc 101    Filed 09/01/11    Entered 09/01/11 21:19:05    Desc Main
Document      Page 3 of 12

accordance with 11 U.S.C.§ § 901 (a) and 1125 of the Bankruptcy Code and bankruptcy Rule 3016, and has been provided to all creditors and parties in interest in this case. This Disclosure Statement is intended to assist creditors with their evaluation of the Plan and their decision to accept or reject the Plan. Your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement at the time of. Or before, such solicitation.

2. <u>Votes Considered in Determining Acceptance of the Plan</u>. When acceptance of the Plan is determined by the Bankruptcy Court, in accordance with 11 U.S.C. § 901 (a) and 1126, and Rule 3018 of the Federal Rules of Bankruptcy Procedure, votes of creditors will only be counted if submitted by creditors with Allowed Claims who are members of the class. If you are in any way uncertain if or how your claim has been listed, you should review the Debtor's list of creditors and any amendments thereto which are on file with the office of the Clerk of the United States Bankruptcy Court located at the Okmulgee Divisional Office, Federal Building Room 229, located at 111 W. 4th Street, Okmulgee, Oklahoma 74447, telephone (918) 758-0126. The Plan further sets forth that information.

3. <u>Hearing on Confirmation of the Plan.</u> The Bankruptcy Court will set a hearing by subsequent notice to determine if the Plan has been accepted by the required number of holders of claims and if other requirements of confirmation of the Plan, as outlined in the United States Bankruptcy Code, have been satisfied. The hearing on confirmation shall be held in the United States Bankruptcy Courtroom located in the U.S. Courthouse and Federal Building at Room 229, located at 111 W. 4th Street, Okmulgee, Oklahoma 74447. Any objections to confirmation of the Plan must be in writing and must be filed with the Clerk of the Bankruptcy Court, at the mailing address mentioned above, and served on counsel for the Debtor, Chris W. Blankenship, Blankenship Law Offices, P.C., PO Box 69, Stigler, Oklahoma 74462, on or before the deadline for filing such objections by the Court.

4. <u>Determination of Whether Impaired Classes have Accepted the Plan</u>. At the scheduled hearing on confirmation of the Plan, the Bankruptcy Court must

determine, among other things, if the Plan has been accepted by the Impaired Classes under the provisions of 11 U.S.C. § 1126 (c) of the United States Bankruptcy Code. An Impaired Class of claims is deemed to have accepted the Plan if class members holding at least two-thirds (2/3) in amount and more than one-half (½) in number of all Allowed Claims of class members actually voting have voted in favor of the Plan.

5. <u>Confirmation of the Plan Without Consent of all Impaired Classes.</u> The Plan may be confirmed even if not accepted by all Impaired Classes, if the Bankruptcy Court finds that the other applicable requirements of confirmation under 11 U.S.C. § § 1129 and 943 (b) of the United States Bankruptcy Code are satisfied. The requirements include those set forth in 11 U.S.C. § 1129 (b) of the Bankruptcy Code, as made applicable by 11 U.S.C. §901 (a), and require generally a showing that the Plan does not discriminate unfairly and the Plan is "fair and equitable" with respect to each class of claims that is impaired under, and has not accepted, the Plan. In a Chapter 9 case, in order to be "fair and equitable" as required by 11 U.S.C. §1129 (b), the Plan should provide creditors with as much as reasonably could be expected under the circumstances. These are complex statutory provisions and this summary is not intended to be a complete statement of the law. If all the Impaired Classes do not accept the Plan, the Debtor will rely on the applicable "cram down" provisions of 11 U.S.C. §1129 (b) of the Bankruptcy Code and seek confirmation of the Plan.

### III. The Debtor

A. <u>History of the Debtor</u>

The Town of Moffett was incorporated in approximately 1910. Moffett's current population totals approximately 128 people. Moffett Public Schools are housed inside Moffett's limits which are attended by children who reside inside Moffett's limits and by children who reside outside Moffett's limits. For several years prior to the filing of this Chapter 9 Petition, the primary source of income for the Town was monies received as a result of collecting fines through the Moffett Police Department. Despite popular belief and rumor, the Town's revenue generated by speeding violations was less than 3% of the total revenue generated by fines paid

Case 09-81814   Doc 101   Filed 09/01/11   Entered 09/01/11 21:19:05   Desc Main
Document       Page 5 of 12

through the Moffett Police Department. The remaining 97% of total revenue generated by fines was realized as a result of fines paid regarding alcohol traffic related violations (DUI, DWI, Open Container, Public Intoxication, etc.), illegal drug violations, expired tags, etc. (See 2003 report of Oklahoma State Auditor and Inspector investigative auditor, Gary P. Gibney). Further findings of Mr. Gibney have documented that in 2005 the Moffett Police and first responders were called to respond to twenty (20) automobile accidents with potential injuries on U. S. Highway 64 and 64D which run through the Moffett city limits. Also, in 2005 the Moffett Police confiscated and submitted to the O.S.B.I., 1,061.8 grams of controlled dangerous drugs, ten (10) pounds of marijuana and 3,106 narcotic pills/capsules. Moffett Police filed 87 felony charges with the Sequoyah County District Attorney's office during 2005/2006. As a result of an ongoing conflict with certain business owners and owners of the buildings housing these businesses, which included "gentleman's strip club, two (2) adult paraphernalia stores, a bingo parlor and a convenience store that sells alcoholic beverages, an apparent complaint was made to the Oklahoma Department of Public Safety. On or about December 12, 2006, the subject business owners and owners of the buildings, through political lobbying, caused the Oklahoma Department of Public Safety to designate the Town of Moffett to be in Violation of the Oklahoma "anti-speed trap" legislation. Furthermore, The Department of Public Safety ordered The Town of Moffett to cease regulating traffic as well as cease traffic-related statutes or ordinances upon U. S. Highway 64 and 64D. Thus, the subject businesses owners and building owners successfully accomplished a major part of their ultimate goal to eliminate law enforcement in the Town of Moffett by eliminating enforcement of laws regarding their patrons as well as eliminating the primary source of income funding the Moffett Police Department.

      A short time prior to the order from the Department of Public Safety, the Town's longtime Mayor, Billy Yandell, died as a result of a long battle with various health issues. Mayor Yandell had been responsible for the Town's finances and business dealings for over ten (10) years. Unfortunately, the Town Board of Trustees was unaware of the negative effect and impact upon Mayor Yandell's ability to manage the Town's business and finances caused by the several years of health problems experienced by Mayor Yandell. For several years prior to Mayor Yandell's death, Mayor Yandell failed to make sure that certain taxes were paid to the IRS. In addition, Mayor Yandell entered into certain financial agreements with several

Case 09-81814    Doc 101    Filed 09/01/11    Entered 09/01/11 21:19:05    Desc Main
Document    Page 6 of 12

businesses on behalf of the Town which the Town later defaulted upon. The combination of the Oklahoma Department of Public Safety Order causing the Town to cease operations regarding U.S. 64 and 64D along with the cumulative debt acquired under Mayor Yandell's management has resulted in the Town's Petition being filed herein. (See Schedule A & B regarding the Town's Assets)

## IV. Commencement and Administration of the Chapter 9 Case

On October 22, 2009, the Town filed a voluntary petition under Chapter 9 of the United States Bankruptcy Code, in accordance with the provisions of 11 U.S.C. §§109, 301. 901(a) and 921. The case was filed in the United States Bankruptcy Court, Eastern District of Oklahoma, and assigned bankruptcy case number 09-81814. Subsequently, the Town filed a Matrix List of Creditors with the Court, as required by 11 U.S.C. §924. The "Notice of Commencement of Chapter 9 Case" shall advise as to the filing and pendency of the Chapter 9 proceeding, terms of the Automatic Stay Order and other matters relating to the commencement of this case. It further advises that objections to the Debtor's Chapter 9 petition, if any, must be timely filed with the Court by the date the Court establishes and that a hearing will be held on subsequent notice upon any such objections.

  1. <u>Cram down,</u> In the event that any Class entitled to vote on the Plan shall fail to accept the Plan in accordance with §901 (a) and 1129 (a)(8) of the Bankruptcy Code, the Debtor requests that the Bankruptcy Court confirm the Plan in accordance with §1129 (b) of the Bankruptcy Code.

  2. <u>Means for Implementation and Execution of the Plan.</u>

    a. <u>Funding the Plan</u>. The Plan will be funded from the net proceeds of the town.

    b. <u>Disbursements</u>. The Town shall act as its own Liquidating Agent. All Proceeds realized by the Town shall be deposited within the Town's operating account. All payments will be made pursuant to the confirmed Plan or otherwise as approved and ordered by the Bankruptcy Court.

    c. All Class 1 and 2 Claims will be disallowed. No funds will be distributed to these Classes. Any such claims shall be deemed fully satisfied and extinguished.

d.  All Class 3 Claims will be partially satisfied due to hardship placed on municipality. The Debtor submits that the Debtor has the ability to make payments under the plan. The Town's receipts for the months of January 2011 through June 2011 are an average total of $3,070.65. The Town's disbursements for the months of January 2011 through June 2011 are an average total of $2,632.65. The balance regarding the Town's operating account on bank statement dated June 30, 2011 totals $7,799.66.

e.  All Class 4 Claims and all Class 5 Claims. No funds will be distributed to these Classes. Any such claims shall be deemed fully satisfied and extinguished.

f.  <u>Post-Confirmation Operations.</u> The Town will continue to exist after confirmation of the Plan for the purpose of providing the Town's residents and citizens necessary services.

g.  <u>Execution and Delivery of Documents</u>. The Town is authorized to make, execute, deliver and record documents and instruments as are necessary or appropriate to promote and implement consummation of the Plan or to carry out the purposes of the Plan.

h.  <u>Objection to Claims and Interests.</u> Any objection to any Claim shall be filed on or before sixty (60) days after the Confirmation Date. This time period may be extended by the Court upon request of the Debtor.

i.  <u>Bar Date</u>. The last day for filing proofs of claim again the Debtor is the Bar Date fixed by the Court prior to Confirmation of the Plan, except for Administrative Claims. The last day for filing of Administrative Claims, except for Claims for compensation and cost reimbursement of professional persons employed by the Town, for which court approval will be obtained and Administrative Claims incurred in the ordinary course of business, shall be thirty (30) days after the Confirmation Date.

j.  <u>Retention and Enforcement of Claims.</u> Pursuant to §§901 (a) and 1123 (b)(3) of the Code, the Debtor may maintain and enforce any claims and/or rights of the Debtor.

k.     Court Fees. On or before the Effective Date, all fees (if any) due from the Debtor to the Bankruptcy Clerk of the Court shall be paid in full.

6. Discharge.

    a.     Discharge of Debts. Except as otherwise provided on the Plan, Confirmation of the Plan will discharge the Debtor from any and all Claims and Debts that arose prior to the Confirmation Date, whether or not: (1) a proof of Claim based on such Debt is filed or deemed filed under §501 of the Code; (2) such Claim is an Allowed Claim under §502 of the Code; or (3) the holder of such Claim accepts the Plan.

    b.     Judgments Obtained on Discharged Debts are Void. Pursuant to §§ 901(a) and 524 (a) (1) of the Code, the Debtor's discharge upon Confirmation of the Plan under §944 (b) of the Code, voids any judgments at any time obtained, to the extent that such judgment is a determination of liability of the Debtor with respect to any Debt discharged, whether or no discharge of such Debt is waived.

    c.     Discharge Injunction. Pursuant to §§901 (a) and 524 (a)(2) of the Code, the Debtor's discharge upon Confirmation of the Plan under §944 (b) of the Code shall operate as an injunction against the commencement or a continuation of an action, the employment of process or an act to collect, recover or offset any discharged Debt as a liability of the Debtor, whether or not discharge of such Debt is waived.

7. Modification of Plan.

    a.     The Plan may be modified upon motion of the Debtor, or corrected by the Debtor prior to the Confirmation Date, without notice and a hearing and without additional disclosure pursuant to §1125 of the Code provided that, after notice to all parties who have filed and served a request for special notice in the Case, the Court finds that such modification does not materially or adversely affect any Creditor or nay Class of Creditors.

    b.     At any time prior to Consummation of the Plan, the Debtor may seek Court authorization to remedy any defect or omission, reconcile any

inconsistencies in the Plan or in the Confirmation Order or effect such other changes, modifications or amendments as may be necessary to carry out the purposes and intent of the Plan.

## Summary of Plan of Debt Adjustment

A.   Introduction

This Disclosure Statement contains a summary of the Plan, and is qualified in its entirety by the full text of the Plan itself.  All terms of the Plan have the same meaning in this Disclosure Statement, although the definition does not appear in the summary set forth below: please see Article 1 of the Plan for the definition.

The Plan designates five (5) Classes of Claims.  A claim shall be deemed classified in a particular class only to the extent that the claim qualifies within the description of that class and shall be deemed classified in a different class to the extent that any remainder of the claim qualifies within the description of such different class.  A claim is in a particular class only to extent that the claim is an Allowed Claim in that class.  Administrative expenses shall be paid in full pursuant to the priority set out in the Plan consistent with Bankruptcy Code.

B.   The Plan

In Summary, the Plan provides for the following treatment of Allowed Claims:

1.   <u>Designation of Classes of Claims</u>

Claims are classified under the Plan as Follows:

The Debtor, Town of Moffett, Oklahoma, proposes the following plan pursuant to Chapter 9 of the Bankruptcy Code:

ARTICLE I

| | | |
|---|---|---|
| 1.01 | Class 1 | Class 1 shall include the claim of the First National Bank of Sallisaw, Oklahoma and the claim of Roberts Salvage.  All Class 1 claims shall be disallowed. |
| 1.02 | Class 2 | Class 2 shall include the claim of Marty Michonski, Assignee of First Government Lease Co. Said claim shall be disallowed. |
| 1.03 | Class 3 | Class 3 shall include the claims regarding the United States Internal Revenue Service and the Oklahoma Tax Commission. |
| 1.04 | Class 4 | Class 4 shall include the claims of GE Money Bank, dba Lowes |

and all schedule E creditors holding unsecured priority claims not mentioned in any other class. All class 4 claims shall be disallowed.

1.05    Class 5    Class 5 shall include all other claims not specifically mentioned or listed in the previous classes, including but not limited to, all schedule F creditors holding unsecured non-priority claims. All class 5 claims shall be disallowed.

# ARTICLE 1.1

## TREATMENT OF CLAIMS AND INTEREST

2.01    Class 1    All Class 1 claims shall be disallowed.

2.02    Class 2    All Class 2 claims shall be disallowed.

2.03    Class 3    All Class 3 claims shall be partially satisfied due to hardship place on municipality. Class 3 claims shall be partially satisfied by the municipality paying 10 % of the total principle debt. All penalties and interest shall be disallowed. Said 10 % amount of the principal debt shall be paid in 120 consecutive monthly installments, commencing on the first day of the calendar month immediately following 30 days subsequent to the confirmation date as follows:

| | | |
|---|---|---|
| Internal Revenue Services | $27,900.94 | 120 consecutive monthly installments of principal and accruing interest at the rate of 3% per annum. |
| Oklahoma Tax Commission | $9,074.14 | 120 consecutive monthly installments of principal and accruing interest at the rate of 3% per annum. Furthermore, as agreed by Leisa Gebetsberger, Representative for Oklahoma Tax Commission on August 26, 2011, as a result of payment issued on August 29, 2011 in the amount of $226.00, any/all liens will be removed, released as satisfied regarding Kathy Luper, personally. |

| | | |
|---|---|---|
| 2.04 | Class 4 | All Class 4 claims shall be disallowed. |
| 2.05 | Class 5 | All Class 5 claims shall be disallowed. |

## VII. Alternatives to Confirmation of the Plan

In considering whether the Plan should be confirmed, the alternatives to Confirmation of the Plan must be considered. The "best interest of creditors" test in the context of the Chapter 9 case does not compare treatment under the Plan to a Chapter 7 liquidation, but rather to other realistic alternatives to the Plan

It is the opinion of the Debtor, after careful consideration, that Confirmation of the Plan is far more advantageous to creditors of the Town and the general public than are the alternatives to Plan confirmation. There are two immediate alternatives to the Court confirming the Plan. First, the Court could dismiss the Town's Chapter 9 case. Second, the Court could decline to confirm the Plan and afford the Town additional time to develop a different Plan. The Debtor believes that declining to confirm its Plan or dismissal of the case would cause the Debtor to completely cease operation and cease providing services to the Moffett Community, including but not limited to, law enforcement, fire protection and emergency response. This would not be in the best interest of the Debtor's creditors.

Dated: September 1st, 2011

                                                               Respectfully submitted,
                                                               Town of Moffett

                                                               By:/s/Kathy Luper
                                                               Debtor, Town of Moffett
                                                               By Kathy Luper, Chairman for
                                                               The Town Board of Trustees

Presented by:
Blankenship Law Offices
Chris W. Blankenship, OBA #13572
P.O. Box 69
Stigler, Oklahoma 74462
Ph: (918) 967-8542
Fx: (918) 967-5018
chrisblankenship1@sbcglobal.net


By: /s/Chris W. Blankenship
Chris W. Blankenship, OBA#13572